E. G. PEET, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

Railroads: DESTRUCTION OF FENCE BY STORM: FAILURE TO REPAIR: KILL-ING STOCK. A storm at night seriously damaged the defendant's track, roadbed and bridges for a distance of fifty miles, broke the telegraph lines, and washed away some ten or twelve miles of its fences, and injured the fence between the right of way and the plaintiff's land and the land of M., which adjoined that of the plaintiff. On the afternoon of the next day the plaintiff's cattle went upon the right of way through a gap in the fence, and were driven back into the field by the section men, who did not, however, repair the fence. Later in the day they were again found upon the right of way, opposite the land of M., and were by the section men driven upon the land of M., but there was no attempt to repair the fence, beyond the temporary stretching of a wire across the gap in the fence along M.'s land. On the following night the cattle went from M.'s land upon the track, and some of them were killed by one of the defendant's trains. The defendant knew of the defects in the fence about eleven hours before the injury to the cattle, and it appeared that, while the damage done by the storm to the defendant's property was so extensive that it could not all be repaired in that time, yet but little effort upon the part of the section men would have been required to repair the fence in question, so as to prevent the cattle from returning to the right of way. *Held*, that there was sufficient evidence of negligence on the part of the defendant to warrant the submission of the question to the jury, and to sustain a verdict for the plaintiff.

*Appeal from Jones District Court.*—HON. J. H. PRESTON, Judge.

WEDNESDAY, MAY 24, 1893.

ACTION to recover for cattle killed by the defendant's train. There was a judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*A. L. Bartholomew* and *H. M. Remley*, for appellant.

*Sheean & McCarn*, for appellee.

GRANGER, J.—The plaintiff and one Murfield owned farms adjoining, and abutting on the defendant's right of way, along the line of which the defendant had constructed a fence. June 14, 1890, a storm washed out a part of the fence between the right of way and the plaintiff's field, and also between the right of way and Murfield's field. The storm was in the night of June 14. On the afternoon of June 15, 1890, about twenty head of the plaintiff's cattle went through the gap in the fence from the field onto the right of way, and were driven back into the field by the section men, who left without repairing the fence. Later in the day, and between 5 and 6 o'clock, the cattle were again on the track, and found by the section men and foreman. They were opposite to the field of Murfield, and were, by the men, driven into Murfield's field, and left without repairing the fence. From this field the cattle again went onto the track, and some of them were, during the night of June 15, killed by the defendant's train. The only question in the case is whether or not, under the evidence, as a matter of law, the defendant was entitled to judgment.

The jury returned the following special findings: "*First.* How long a time intervened between the time knowledge came to the defendant of the defect in the fence and the time of the injury to said stock? *Answer.* About eleven hours. *Second.* Under the circumstances, as shown by the evidence, did the defendant

exercise ordinary diligence in repairing the fence?
*Answer.* He did not."

We think the findings of fact have such support in
the evidence that we should not interfere. The evidence
discloses that the storm, on the night of June 14,
seriously damaged the railway track, roadbed, and
bridges of the defendant's line for a distance of nearly
fifty miles; that the telegraph line was broken, and
some ten or twelve miles of fence destroyed; and it is
urged that because of such a situation, requiring so
much to be done with the utmost dispatch, in order
that trains might be moved in the interest of the com-
pany's business, and for the preservation of life and
property intrusted to its care, as a matter of law, the
time found by the jury is not sufficient for the repair of
the fence, by the exercise of reasonable care. The facts
as to the condition of the road after the storm are not
in dispute, but notwithstanding they do not have the
effect of presenting a question of law as to negligence,
upon an undisputed state of facts.

A difficulty with the appellant's contention is that
it brings into view so many remote facts, entirely dis-
connected from the subject of inquiry, as the record
discloses. For instance, the record is, rather than
otherwise, an affirmative showing that the condition
of the line for fifty miles did not interfere with the
means for making the repairs to the fence, for, to our
minds, it does not appear that there was anything to
prevent the section men who turned the cattle into
Murfield's field from then so repairing the fence as to
have prevented a return of the cattle, and such a
course, it seems to us, was indicated by the most ordi-
nary diligence. It is true that it was then nearly or
quite 6 o'clock, and it may have been necessary to go
a mile or more for one or two posts; but will it be said
that such facts are a sufficient excuse for leaving those
cattle, that had twice, the same afternoon, been upon

the track, to return, as they would be likely to do? The testimony shows that it would have taken about an hour to fix the fence at that point, and the presence of the cattle in that open field indicated a necessity for prompt action. As we gather from the evidence, when the cattle were driven into the lot, one of the men took a wire, and twisted it around a stake, in an attempt to fix the fence, and by direction of the "boss" they "all went home" without repairing it. As we have said, it is not a case where the undisputed facts show a want of negligence, but it is a case, to say the least, where the question of negligence is to be determined from an undisputed state of facts, as to which ordinary minds might differ, and the question then becomes one for the jury. *Mathews v. City of Cedar Rapids*, 80 Iowa, 459, and authorities there cited.

The case of *Lemke v. R'y Co.*, 39 Wis. 449, is much relied upon by the appellant, but it is not authority for its position. There certain undisputed facts are held, as a matter of law, to constitute negligence in removing goods, when delivered by a common carrier. The goods reached their destination at 5 o'clock Friday afternoon. The consignee resided at the station, and neglected to remove them before the next Tuesday noon, when they were destroyed by fire. The cases are without any special similarity as to facts. In that case the court places particular stress upon the fact that the goods were in the depot all of Monday, and half of Tuesday, without removal, and without any sufficient reason for it, and held the failure, as a matter of law, to be such negligence as released the defendant from liability as a common carrier, and rightly so. Persons of ordinary intelligence could not reasonably differ as to such a conclusion, guided by the rules of law fixing the liability of carriers.

*Goddard v. C. & N. W. R'y Co.*, 11 N. W. Rep. (Wis.)593, is not a parallel case in its facts, though quite

like this in many particulars. In this case the cattle had been on the track, and the probability of their returning was quite apparent. In that case the condition of the ground and water was such that the fence could not be repaired sooner, and the court recites the particular facts showing it. In this case there is no reasonable ground to claim that the fence could not be repaired at the time the cattle were driven into the field. The day the cattle were driven into the field was Sunday, and it is urged that Sunday should not be computed in the reasonable time allowed by law for repairing the fence. The court, in its instructions, made no reference to Sunday, and the law, as given, would not exclude it. No exceptions are taken to the instructions, and they must stand as the correct law of the case. The record shows, without mistake, that, in the trial and submission of the case, Sunday was considered in determining whether or not the fence was repaired in a reasonable time. The question seems to be presented here for the first time, and it is too late. AFFIRMED.